File No. 11770-0072-JCG

Law Offices
**PARKER McCAY P.A.**
By:  John C. Gillespie, Esquire
Three Greentree Centre
7001 Lincoln Drive West
P.O. Box 974
Marlton, NJ  08053-0974
(856) 596-8900
Fax:  (856) 489-6980
jgillespie@parkermccay.com
Attorneys for Defendants, Delran Township, Delran Police Dept.,
Officer Jill Boyle and Sgt. Murphy

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PATRICIA VENNER,<br><br>     Plaintiff,<br><br>     vs.<br><br>DELRAN TOWNSHIP, DELRAN<br>POLICE DEPT., OFFICER JILL<br>BOYLE and SGT. MURPHY,<br><br>     Defendants. | THE HONORABLE JEROME B SIMANDLE<br><br>CIVIL ACTION NO. 05-cv-2480 (JBS)<br><br>CIVIL ACTION |

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

JOHN C. GILLESPIE, ESQUIRE
On the Brief

## TABLE OF CONTENTS

**PAGE(S)**

STATEMENT OF MATERIAL FACTS ..................................................................................1

PROCEDURAL HISTORY.................................................................................................5

STANDARD OF REVIEW ................................................................................................6

LEGAL ARGUMENT.......................................................................................................7

I.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT OF
     PLAINTIFF'S 42 U.S.C. § 1983 CLAIM .........................................................7

     A.   Defendants Did Not Deprive Plaintiff of Any Rights, Privileges or
          Immunities Secured by the Constitution of the United States or by
          Federal Statute. ........................................................................................7

     B.   Defendant Officers are Entitled to Qualified Immunity from Suit
          on Plaintiff's 42 U.S.C. § 1983 Claim.................................................13

     C.   Defendant Township and Defendant Police Department are
          Entitled to Summary Judgment of Plaintiff's 42 U.S.C. § 1983
          Claim Because Plaintiff Offers No Evidence to Establish that the
          Individual Defendants' Alleged Deprivation of Her Federal Rights
          Resulted From a Policy or Custom of Defendant Township or of
          Defendant Police Department.................................................................15

II.  DEFENDANTS ARE ENTITLED TO THE DISMISSAL OF
     PLAINTIFF'S CLAIM UNDER THE NEW JERSEY TORT CLAIMS
     ACT.................................................................................................................17

     A.   If This Court Dismisses Plaintiff's 42 U.S.C. § 1983 Claim With
          Prejudice, it Must Decline to Exercise Jurisdiction Over Plaintiff's
          Claim Under the New Jersey Tort Claims Act. ....................................17

     B.   Plaintiff's is Barred from Bringing an Action Under the New
          Jersey Tort Claims Act Because Plaintiff Failed to Satisfy the
          Presentation of Claims Requirements of N.J.S.A. 59:8-8 and
          N.J.S.A. 59:8-9.....................................................................................17

CONCLUSION..............................................................................................................19

## TABLE OF CITATIONS

**PAGE(S)**

**Cases**

Atwater v. City of Lago Vista, 532 U.S. 318, 341 n. 11 (2001) ................................................13

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) ................................................................6

Groman v. Tp. of Manalapan, 47 F. 3d 628, 636 (3d. Cir. 1995) (citing Baker v.
    McCollan, 443 U.S. 137, 143-44, 99 S. Ct. 2689, 2694, 61 L. Ed. 2d 433, 441
    (1979))..................................................................................................................................11

Harlow, 457 U.S. at 818, 815.......................................................................................................14

Hedges v. Musco, 204 F. 3d 109, 123 (3d. Cir. 2000) (quoting Borough of West
    Mifflin v. Lancaster, 45 F. 3d 780, 788 (3d. Cir. 1995)) ................................................17

Michaels v. New Jersey, 222 F.3d 118, 121 (3d. Cir. 2000) (citations and internal
    quotations omitted) ...........................................................................................................14

Natale v. Camden County Correctional Facility, 318 F. 3d 575, 583 (3d Cir. 2003)
    (citing Monell v. New York City Dep't. of Soc. Serv's., 436 U.S. 658, 691 (1978)).........15

Palma v. Atlantic County, 53 F. Supp. 2d 743, 755 (D.N.J. 1999) (citing Sharrar v.
    Felsing, 128 F. 3d 810, 817-18 (3d. Cir. 1997)) ..............................................................11

Ryan v. Burlington County, 889 F. 2d 1286, 1292 (3d. Cir 1989) (citing Harlow v.
    Fitzgerald, 457 U.S. 800, 815 (1982)) .............................................................................14

Sharrar, 128 F. 3d at 818 (quoting Deary v. Three Un-Named Police Officers, 746 F.
    2d 185, 192 (3d. Cir. 1984)) ............................................................................................11

Shuman v. Penn Manor School District, 422 F. 3d 141, 146 (3d Cir 2005) (citations
    omitted)................................................................................................................................8

Trabar v. Wells Fargo Armored Service Corporation, 269 F. 3d 243, 250 (3d. Cir.
    2001) (quoting Wildoner v. Borough of Ramsey, 162 N.J. 375, 390 (2000)).  In
    Sanducci v. City of Hoboken, 315 N.J. Super. 475, 482 (App. Div. 1998).......................11

Trap Rock Industries, Inc. v. Kohl, 63 N.J. 1, 3 (1973), cert. denied, 414 U.S. 860
    (1973)...................................................................................................................................9

Welsh v. Wisconsin, 466 U.S. 740, 756 (1984) (White, J., dissenting) (emphasis
    added)..................................................................................................................................13

**Statutes**

42 U.S.C. § 1983...........................................................................................................5, 19, 20

N.J.S.A. 2C:33-4............................................................................................................................1

N.J.S.A. 2C:33-4a (Id. 55:11-15)..................................................................................................4

N.J.S.A. 59:8-8.......................................................................................................................17, 18

N.J.S.A. 59:8-9.......................................................................................................................17, 18

**Rules**

Fed. R. Civ. P. 56(c) ......................................................................................................................6

## STATEMENT OF MATERIAL FACTS

1.    On May 19, 2003 at approximately 7:30 p.m., Plaintiff Patricia Venner, a black female then 52 years of age, was in the Shop Rite grocery store on the corner of Park Avenue and Route 130 in Defendant Delran Township (T. 8/13/03 Mun. Ct. 7:15-23).[1] Plaintiff's behavior and clothing drew the attention of Carolyn Williams, a white female undercover loss prevention detective employed by Shop-Rite, who suspected that Plaintiff was attempting to shoplift (Id. 8:16 through 11:12).

2.    At Plaintiff's criminal trial on the charge of harassment in violation of N.J.S.A. 2C:33-4, Williams testified that she attempted to discreetly observe Plaintiff from a distance of about fifteen to twenty feet (Id. 11:5-21; 13:18-19) for a period of between twelve and twenty minutes (Id. 22:19-23:3). In her deposition taken in a separate State Court action between Plaintiff and Shop-Rite, arising from this incident, Plaintiff estimated that Williams observed her for approximately fifteen minutes (T. 11/22/05.36:8-21).

3.    Williams testified that Plaintiff approached her from behind in what Williams described as "an agitated state" and said that she knew Williams was watching her (T. 8/13/03.14:2-12); Plaintiff claims she merely asked Williams whether Williams was watching her (T. 11/22/03.23:9-14, 25:5-7). Plaintiff told Williams to stop watching her (T.

---

[1] T. 5/21/03 Mun. Ct.: transcript of May 21, 2003 Delran Township municipal court hearing in State v. Venner, Exh. A.
T. 7/9/03 Mun. Ct.: transcript of July 9, 2003 Delran Township municipal court hearing in State v. Venner, Exh. B.
T. 8/13/03 Mun. Ct.: transcript of August 13, 2003 Delran Township Municipal court trial and verdict in State v. Venner, Exh. C.
T. 11/22/05: November 22, 2005 deposition of Patricia Venner, taken in Venner v. Shop Rite, Superior Court of New Jersey, Law Division, Burlington County, Docket No. BUR-L-2109-04, Exh. D.
T. 2/13/06: February 13, 2006 deposition of Patricia Venner, taken in this action. Please note that the deposition transcript erroneously notes the deposition date as February 13, 2005, Exh. E.

8/13.14:2-13; T. 11/22/05.25:14-15). Williams testified that she replied "I don't understand. Is there a problem with people in the store watching you?" (T. 8/13.15:14-15).

4.    Williams testified that Plaintiff pointed her finger in Williams' face at close range, forcing Williams to back up to avoid contact, and said that if Williams "wanted to keep her eyes", Williams would stop watching Plaintiff (Id. 15:15-16:13).

5.    Plaintiff claims she held her finger up in front of her own face (T. 11/22.38:1-15) and told Williams to "keep her eyes in her head" (Id. 25:15-16).

6.    Williams testified that she interpreted Plaintiff's statement as a threat (T. 8/13:16-15) and told Plaintiff that if there was a problem, the two should talk to the store manager (Id. 17:6-10). Williams then walked to the courtesy desk at the front of the store and instructed store employees to call the store manager (Id. 17:13-21). A decision was then made by store employees to call in Defendant Delran Township Police Department.

7.    Defendant Patrolwoman Jill Boyle, Defendant Sergeant Martin Murphy, and Patrolman Howley were dispatched to the store. Patrolwoman Boyle's police report (Exhibit I) reveals that when the officers arrived, Williams recounted the incident to them and stated that Plaintiff had harassed her and that she would swear out a complaint attesting to the incident.

8.    Patrolwoman Boyle's report further indicates that Plaintiff "was very uncooperative" and initially refused to produce identification, claiming that she had done nothing wrong; Plaintiff claims that she initially thought that she had left her ID in the car and that she produced ID when she realized she had it on her person (T. 2/13/06.56:1-11).

9.    The report further indicates that Plaintiff began alleging that the officers "were only investigating her because she is black"; the officers responded that they were

2

treating Plaintiff the same way they would treat anyone else detained in the course of an investigation.

10.     Plaintiff states that she, the officers, and Williams went upstairs and that she, Patrolwoman Boyle, and Patrolman Howley went into one office while Sergeant Murphy took her handbag and identification into another office, accompanied by Williams and the store manager (Id. 58:16-59:4).

11.     Plaintiff further states that she was unable to see what transpired in the other office because the door to the other office was closed (Id. 59:5-7).  Plaintiff states that Murphy, Williams, and the store manager emerged from the other office after approximately fifteen minutes (Id. 59:16-19).

12.     At that time, Plaintiff was arrested, handcuffed with her hands behind her back, and transported to a station of Defendant Delran Police Department, where she was processed (Exhibit F).

13.     Plaintiff states that she was held at the police station for between thirty and forty-five minutes (T. 2/13/06.62:19-20).

14.     During this time, the Police Department contacted the Honorable Richard E. Andronici, J.M.C., who directed Boyle to issue Plaintiff a summons charging Plaintiff with the petty disorderly persons offense of harassment, in violation of N.J.S.A. 2C:33-4 (Exhibit F).  Boyle issued the summons and advised Plaintiff that she was free to leave.

15.     Plaintiff expressed a desire to swear out a complaint for harassment against Williams (Id.) and was permitted to do so.  Patrolwoman Boyle's report states that Plaintiff then refused to leave the station, claiming that the officers had acted out of racism, expressing dissatisfaction with Judge Andronici, and asking to speak to the Police Chief (Id.).

3

Plaintiff claims she remained only long enough to check the contents of her handbag before departing (T. 2/13/06.74:16-76:2).

16.   Williams was not arrested on the complaint sworn out by Plaintiff.   The summons against Williams was subsequently dismissed.

17.   Plaintiff was tried on the harassment charge before Judge Andronici in the Delran Township Municipal Court on August 13, 2003 (Exhibit C).  Judge Andronici found credible Williams' testimony that Plaintiff's activity was such that Williams should observe her while she was in the store (T. 8/13.53:11-24), that Williams observed Plaintiff for a period of twelve to fifteen minutes (Id. 53:24-54:1), and that Plaintiff became upset, confronted Williams, and asked if Williams was following her (Id. 54:2-5).

18.   Judge Andronici further found credible Williams' testimony that Plaintiff pointed a finger in Williams' face during the incident and threatened to injure her eyes in some fashion (Id. 54:14-20).

19.   Judge Anronici ruled, as a matter of law, that Plaintiff made a communication likely to cause annoyance or alarm, an action proscribed by N.J.S.A. 2C:33-4a (Id. 55:11-15). Judge Andronici concluded, however, that the State did not prove beyond a reasonable doubt that Plaintiff made this communication with the purpose to harass Williams, as required to obtain a conviction under N.J.S.A. 2C:33-4 (Id. 55-58).  For this reason, Judge Andronici acquitted Plaintiff of the harassment charge (Id. 58:1-3).

4

## PROCEDURAL HISTORY

This action commenced on or about May 11, 2005 when Plaintiff filed her Complaint, alleging claims under 42 U.S.C. § 1983 and the New Jersey Tort Claims Act. Plaintiff specifically alleges that Defendants violated her right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution, that she was falsely imprisoned in violation of her federal and state constitutional rights, and that Defendants' treatment of her violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Defendants timely filed an answer denying Plaintiff's claims, and now move for summary judgment on all claims.

## STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248. The non-moving party may not simply rest on its pleadings to oppose a summary judgment motion but must affirmatively come forward with admissible evidence establishing a genuine issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). It is respectfully submitted that any factual disputes are immaterial to the Court deciding this matter.

## LEGAL ARGUMENT

### I.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT OF PLAINTIFF'S 42 U.S.C. § 1983 CLAIM

Defendants are entitled to summary judgment dismissing Plaintiff's 42 U.S.C. § 1983 claim. Defendants did not deprive Plaintiff of any rights, privileges or immunities secured by the Constitution of the United States or by federal statute. No Court, to the knowledge of these Defendants, has found that a law enforcement officer's warrantless arrest of an individual for a petty disorderly persons offense, based on probable cause, violates the Fourth Amendment to the United States Constitution. Furthermore, Defendant Township and Defendant Delran Police Department are entitled to summary judgment of Plaintiff's 42 U.S.C. § 1983 claim because Plaintiff offers no evidence to establish that Defendants' alleged deprivation of her federal rights resulted from a policy or custom of Defendant Township or of Defendant Police Department.

   A.   Defendants Did Not Deprive Plaintiff of Any Rights, Privileges or Immunities Secured by the Constitution of the United States or by Federal Statute.

42 U.S.C. § 1983, in relevant part, provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

This statute "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." Shuman v. Penn Manor School

District, 422 F. 3d 141, 146 (3d Cir. 2005) (citations omitted).  "To establish valid claims

under § 1983, the plaintiff must demonstrate that the defendants, while acting under color of

state law, deprived him of a right secured by the Constitution or the laws of the United

States."  Id. (citations omitted).  Defendants acknowledge that Defendant officers were

acting under color of state law in the course of their interaction with Plaintiff.  However,

none of the Defendants deprived Plaintiff of a right secured by the federal Constitution or by

federal statute.  For this reason, Defendants respectfully request that this court grant their

motion for summary judgment of Plaintiff's 42 U.S.C. § 1983 claim and dismiss this claim

with prejudice.

> 1.   Plaintiff has offered no evidence establishing that
>       Defendants searched her handbag.

Plaintiff's Complaint alleges that during the incident giving rise to this action, "her

hangbag [sic] had been turned upside down [and] items were not in it's [sic] place."  In her

deposition in this matter, Plaintiff alleged that "[Sergeant Murphy] took my handbag and my

ID into another office [and] went through everything" (T. 2/13/06.58:10-11).  However,

Plaintiff also admitted in this same deposition that she was unable to see what transpired in

the other office because the door to the other office was closed (Id. 59:5-7).  In his affidavit

(Exhibit G), Sergeant Murphy states that he did not search Plaintiff's handbag.  Plaintiff can

offer no evidence to the contrary.

> 2.   Defendants did not deny Plaintiff the equal protection
>       of the laws of the State of New Jersey.

Plaintiff's Complaint also alleges that "the protection of the law was provided to

Caroline Williams who is Caucasion [sic], under Article XIV U.S. Constitution [presumably

the Fourteenth Amendment to the United States Constitution] and Plaintiff was deny [sic] the

equal protection under Article XIV U.S. Constitution." Plaintiff, however, was permitted to swear out a complaint against Williams for harassment in violation of N.J.S.A. 2C:33-4 (Exhibit F) just as Williams had been permitted to swear out a complaint against Plaintiff for the same charge (Exhibit F). Both cases went before the Municipal Court of the Township of Delran; neither Plaintiff nor Williams was ultimately convicted of the charge. Plaintiff was afforded the equal protection of the laws.

Plaintiff's Complaint further alleges that she was denied the equal protection of the laws because Defendant Police Department filed a police report about the incident containing her name and identifying information and did not file a similar report containing Williams' name and identifying information. Plaintiff does not indicate what deprivation this difference in treatment caused her. Police knew the names of both individuals facing harassment charges and permitted both individuals to swear out complaints. Police knew they could locate Williams through her employer, Shop Rite. Both individuals went before the Municipal Court on the same charge.

In Trap Rock Industries, Inc. v. Kohl, 63 N.J. 1, 3 (1973), cert. denied, 414 U.S. 860 (1973), appellant's president and chairman of the board of directors was convicted of bribery and obstructing justice. The State Commissioner of Transportation subsequently commenced proceedings to debar appellant's president, appellant, and three other companies owned by appellant's president from bidding upon any contract with the Department or any county or municipality using State funds. Id. After a hearing, the Commissioner ordered said debarment for a period of five years. Id. The Appellate Division affirmed the order except for the provisions debarring the principals from bidding upon county and municipality contracts. Id. Appellant then sought a rehearing in the Appellate Division for the purpose of

9

raising an equal protection issue, claiming that the Commissioner had not debarred another

company which allegedly had bribed a public official.  Id. at 5.  The Appellate Division

declined to rehear the case.  Id.  The State Supreme Court affirmed the Appellate Division's

action, holding that:

> an equal protection issue is not generated merely by an
> assertion that someone else was dealt with differently.  This
> must be so unless laws and duties of office can be annulled by
> a single error in their execution.  We, of course, do not assume
> that the Commissioner was remiss as to that other alleged
> offender.  We do not have the facts.  All we have is a naked
> allegation that there are no relevant differences, with no charge
> that the Commissioner intended an invidious discrimination.
> In any event, it is inappropriate to advance the constitutional
> issue by a petition for rehearing on appeal and in a proceeding
> to which the other alleged offender is not a party.

Id.  Here, this court faces a naked allegation, unsupported by any proffered evidence, in a

proceeding to which Williams is not a party, that there were no relevant differences in

Plaintiff's and Williams' situations and that Defendants, in collecting only Plaintiff's

identifying information, intended an invidious discrimination.  This is insufficient to raise an

equal protection issue.

> 3.  Defendant officers' arrest and brief detainment of
> Plaintiff did not violate any federal constitutional or
> statutory provisions.

Plaintiff's Complaint alleges that she was illegally arrested and falsely imprisoned.

Defendant officers' arrest of Plaintiff, however, did not violate any federal constitutional or

statutory provisions.  The arrest was supported by probable cause, and Defendant officers'

authority to arrest Plaintiff for harassment was not proscribed by the Fourth Amendment to

the United States Constitution or by federal statute.  Because the arrest was supported by

probable cause, a claim for false imprisonment cannot arise from the arrest.  Groman v. Tp.

of Manalapan, 47 F. 3d 628, 636 (3d. Cir. 1995) (citing <u>Baker v. McCollan</u>, 443 U.S. 137,

143-44, 99 S. Ct. 2689, 2694, 61 L. Ed. 2d 433, 441 (1979)).

<blockquote>
a.    Defendant officers' arrest of Plaintiff<br>
was supported by probable cause.
</blockquote>

"To state a § 1983 claim for unlawful arrest, a plaintiff must plead that he was

arrested by a State actor without probable cause." <u>Palma v. Atlantic County</u>, 53 F. Supp. 2d

743, 755 (D.N.J. 1999) (citing <u>Sharrar v. Felsing</u>, 128 F. 3d 810, 817-18 (3d. Cir. 1997)). "In

a § 1983 action the issue of whether there was probable cause to make an arrest is usually a

question for the jury, but 'where no genuine issue as to any material fact exists and where

credibility conflicts are absent, summary judgment may be appropriate.'" <u>Sharrar</u>, 128 F. 3d

at 818 (quoting <u>Deary v. Three Un-Named Police Officers</u>, 746 F. 2d 185, 192 (3d. Cir.

1984)). "The question is for the jury only if there is sufficient evidence whereby a jury could

reasonably find that the police officers did not have probable cause to arrest." <u>Sharrar</u>, 128

F. 3d at 818 (quoting <u>Deary</u>, 746 F. 2d at 190).

"Probable cause is defined in terms of facts and circumstances sufficient to warrant a

prudent man in believing that the [suspect] had committed or was committing an offense."

<u>Sharrar</u>, 128 F. 3d at 817-18 (quoting <u>Gerstein v. Pugh</u>, 420 U.S. 103, 111 (1975)) (additional

citations and internal quotations omitted). "The Supreme Court of New Jersey has held that

'[p]robable cause to arrest can be based on the statement of a witness or informant.'" <u>Trabar</u>

<u>v. Wells Fargo Armored Service Corporation</u>, 269 F. 3d 243, 250 (3d. Cir. 2001) (quoting

<u>Wildoner v. Borough of Ramsey</u>, 162 <u>N.J.</u> 375, 390 (2000)).  In <u>Sanducci v. City of</u>

<u>Hoboken</u>, 315 <u>N.J.</u> <u>Super.</u> 475, 482 (App. Div. 1998), the Appellate Division noted that:

<blockquote>
[t]here is an assumption grounded in common experience that<br>
[a concerned citizen], in reporting criminal activity, would be<br>
motivated by factors which are consistent with law enforce-
</blockquote>

> ment goals. Such indicia of reliability are heightened still
> further when the citizen provides the police with a sworn
> statement, thus subjecting himself or herself to potential civil
> or criminal liability.

Summary judgment of this issue is appropriate because the facts are not in dispute and there are no credibility conflicts. When the Defendant officers arrived at Shop Rite, they spoke to Williams, who told them that Plaintiff had been "acting suspicious and zig-zagging in and out of the aisles" and had approached Williams in what Williams described as an "angered" state and asked Williams why Williams was watching her (Exhibit F). When, according to Williams' version of events as recorded in the police report, Williams asked Plaintiff "What's the problem with people shopping and looking around?", Plaintiff pointed her finger in Williams' face and said something to the effect that if Williams wanted to keep her eyes, she had better stop watching her (Id.). Williams also offered to, and did, swear out a complaint at the police station (Id.), thus heightening the indicia of reliability ordinarily associated with the statement of an ordinary citizen. The circumstances facing Defendant officers were more than sufficient to permit a prudent individual to believe that Plaintiff had committed an offense. Indeed Judge Andronici specifically found Williams' testimony in this regard to be credible. A jury could not reasonably find otherwise.

> b.  Defendant officers' authority to arrest
>     Plaintiff for harassment was not
>     proscribed by the Fourth Amendment to
>     the United States Constitution or by
>     federal statute.

In the State of New Jersey, harassment is a petty disorderly persons offense unless a person "in committing an offense . . . was serving a term of imprisonment or was on parole or probation as the result of a conviction of any indictable offense under the laws of this State, any other State or the United States." N.J.S.A. 2C:33-4. Neither the Fourth

Amendment to the United States Constitution nor any federal statute prohibits or in any way proscribes a law enforcement officer from arresting an individual for what is termed a disorderly persons offense (or a petty disorderly persons offense) in the Criminal Code of this State and a misdemeanor in the criminal codes of its sister States.

In his dissenting opinion in Welsh v. Wisconsin, 466 U.S. 740, 756 (1984) (White, J., dissenting) (emphasis added), Justice White noted that:

> [a]t common law, "a peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there was reasonable ground for making the arrest." United States v. Watson, 423 U.S. 411, 418 (1976). But the requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment, see Street v. Surdyka, 492 F. 2d 368, 371-372 (4th Cir. 1974); 2 W. LaFave, Search and Seizure § 5.1 (1978), and we have never held that a warrant is constitutionally required to arrest for nonfelony offenses occurring out of the officer's presence.

More recently, in Atwater v. City of Lago Vista, 532 U.S. 318, 341 n. 11 (2001), rehearing denied, 533 U.S. 924 (2001), the Supreme Court has declined to "speculate whether the Fourth Amendment entails an 'in the presence' requirement for purposes of misdemeanor arrests."

B.    Defendant Officers are Entitled to Qualified Immunity from Suit on Plaintiff's 42 U.S.C. § 1983 Claim.

Defendant officers respectfully submit that were this court, in the wake of the Supreme Court's silence on the issue, to rule that a law enforcement officer's warrantless arrest of an individual for a petty disorderly persons offense, based on probable cause, violates the Fourth Amendment to the United States Constitution, it nonetheless should grant Defendant officers' motion for summary judgment on Plaintiff's 42 U.S.C. § 1983 claim.

Under such circumstances, Defendant officers would be entitled to qualified immunity from suit on this claim.

"The defense of qualified immunity is a recognition of the fact that subjecting public officials to personal liability for their discretionary actions results in the distraction of those officials from their public duties, inhibits their discretionary actions and, quite possibly, deters qualified people from accepting public service." Ryan v. Burlington County, 889 F. 2d 1286, 1292 (3d. Cir 1989) (citing Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982)). "Thus, the doctrine of qualified immunity balances the interest in allowing public officials to perform their discretionary functions without fear of suit against the public's interest in vindicating important federal rights." Ryan, 889 F. 2d at 1292.

"In analyzing whether a defendant is entitled to the dismissal of an action based on the defense of qualified immunity, [a court] must first determine whether the plaintiff's claims make out a violation of a constitutional [or statutory] right." Michaels v. New Jersey, 222 F.3d 118, 121 (3d. Cir. 2000) (citations and internal quotations omitted). If this court determines that Defendants did not violate any of Plaintiff's federal constitutional or statutory rights, Defendants are entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claim. If this court determines that Defendants violated Plaintiff's federal constitutional or statutory rights, it "must then determine whether the defendant violated a clearly established [constitutional or statutory] right such that a reasonable official in the defendant's position would know that his conduct was unlawful." Id. (citations omitted). "These inquiries are questions of law that the court must resolve." Id. (citations omitted). In Harlow, 457 U.S. at 818, 815, the Supreme Court explained that:

> [r]eliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law,

14

> should avoid excessive disruption of government and permit
> the resolution of many insubstantial claims on summary
> judgment. On summary judgment, the judge appropriately may
> determine, not only the currently applicable law, but whether
> that law was clearly established at the time an action occurred.
> If the law at that time was not clearly established, an official
> could not reasonably be expected to anticipate subsequent legal
> developments, nor could he fairly be said to "know" that the
> law forbade conduct not previously identified as unlawful.

The Supreme Court's opinion in Atwater, 532 U.S. at 341 n. 11, and Justice White's

dissenting opinion in Welsh, 466 U.S. at 756, (White, J., dissenting), indicate that an

individual's Fourth Amendment right not to be subject to a warrantless arrest for a petty

disorderly persons offense, even when said arrest is based on probable cause, has not been

clearly established by federal jurisprudence. Indeed, the existence of the right has yet to be

established at all. Were this court to establish the existence of the right in this case,

Defendant officers would be entitled to qualified immunity from suit on Plaintiff's 42 U.S.C.

§ 1983 claim. For this reason, Defendant officers respectfully request that this court grant

them summary judgment of this claim and dismiss this claim with prejudice.

C.   Defendant Township and Defendant Police Department are
     Entitled to Summary Judgment of Plaintiff's 42 U.S.C. § 1983
     Claim Because Plaintiff Offers No Evidence to Establish that the
     Individual Defendants' Alleged Deprivation of Her Federal Rights
     Resulted From a Policy or Custom of Defendant Township or of
     Defendant Police Department.

"[Municipalities] cannot be held responsible for the acts of its employees under a

theory of respondeat superior or vicarious liability." Natale v. Camden County Correctional

Facility, 318 F. 3d 575, 583 (3d Cir. 2003) (citing Monell v. New York City Dep't. of Soc.

Serv's., 436 U.S. 658, 691 (1978)). Even were this court to rule that a law enforcement

officer's warrantless arrest of an individual for a petty disorderly persons offense, based on

probable cause, violates the Fourth Amendment to the United States Constitution, "[i]n order

for [Defendant Township or Defendant Police Department] to be liable, [Plaintiff] must provide evidence that there was a relevant . . . policy or custom, and that the policy caused the constitutional violation [she] allege[s]." <u>Natale</u>, 318 F. 3d at 583-84 (citing <u>Board of the County Commissioners of Bryan County</u>, <u>Oklahoma v. Brown</u>, 520 U.S. 397(1997)). Because Plaintiff offers no such evidence in this case, Defendants are entitled to summary judgment of Plaintiff's 42 <u>U.S.C.</u> § 1983 claim.

II.   **DEFENDANTS ARE ENTITLED TO THE DISMISSAL OF PLAINTIFF'S CLAIM UNDER THE NEW JERSEY TORT CLAIMS ACT.**

If this Court dismisses Plaintiff's 42 U.S.C. § 1983 claim with prejudice, it must decline to exercise jurisdiction over Plaintiff's claim under the New Jersey Tort Claims Act. Were this court nonetheless to exercise jurisdiction over this claim, Defendants still are entitled to the dismissal of the claim. Plaintiff is barred from bringing an action under the New Jersey Tort Claims Act because Plaintiff failed to satisfy the presentation of claims requirements of N.J.S.A. 59:8-8 and N.J.S.A. 59:8-9.

A.   If This Court Dismisses Plaintiff's 42 U.S.C. § 1983 Claim With Prejudice, it Must Decline to Exercise Jurisdiction Over Plaintiff's Claim Under the New Jersey Tort Claims Act.

"[The Third Circuit] has recognized that, 'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" Hedges v. Musco, 204 F. 3d 109, 123 (3d. Cir. 2000) (quoting Borough of West Mifflin v. Lancaster, 45 F. 3d 780, 788 (3d. Cir. 1995)). Because no such considerations exist here, this Court must decline to exercise jurisdiction over Plaintiff's claim under the New Jersey Tort Claims Act if it dismisses Plaintiff's 42 U.S.C. § 1983 claim with prejudice.

B.   Plaintiff's is Barred from Bringing an Action Under the New Jersey Tort Claims Act Because Plaintiff Failed to Satisfy the Presentation of Claims Requirements of N.J.S.A. 59:8-8 and N.J.S.A. 59:8-9.

N.J.S.A. 59:8-8 provides, in relevant part, that:

> [a] claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided

> in this chapter not later than the ninetieth day after accrual of
> the cause of action. . . . The claimant shall be forever barred
> from recovering against a public entity or public employee if:
>
> a. He failed to file his claim with the public entity
> within 90 days of accrual of his claim except as otherwise
> provided in [N.J.S.A.] 59:8-9[.]
>
> . . .
>
> Nothing in this section shall prohibit an infant or
> incompetent person from commencing an action under this act
> within the time limitations contained herein, after his coming to
> or being of full age or sane mind.

N.J.S.A. 59:8-9 provides, in relevant part, that

> [a] claimant who fails to file notice of his claim within 90 days
> as provided in [N.J.S.A. 59:8-8] may, in the discretion of a
> judge of the superior court, be permitted to file such notice at
> any time within 1 year after the accrual of the claim provided
> that the public entity or the public employee has not been
> substantially prejudiced thereby. . . .

Plaintiff, whose claim accrued on May 19, 2003, never has filed a notice of claim with

Defendants (Exhibit H).  Pursuant to N.J.S.A. 59:8-8 and N.J.S.A. 59:8-9, Plaintiff is forever

barred from recovering against Defendants.  Defendants respectfully request that this court

dismiss Plaintiff's claim under the New Jersey Tort Claims Act with prejudice.

**CONCLUSION**

Defendants did not deprive Plaintiff of any rights, privileges or immunities secured by the Constitution of the United States or by federal statute. Were this court, in the wake of the Supreme Court's silence on the issue, to rule that a law enforcement officer's warrantless arrest of an individual for a petty disorderly persons offense, based on probable cause, violates the Fourth Amendment to the United States Constitution, Defendant officers would be entitled to qualified immunity from suit on Plaintiff's 42 U.S.C. 1983 claim because the right was not clearly established at the time of the incident giving rise to Plaintiff's claim. Furthermore, Defendant Township and Defendant Police Department are entitled to summary judgment of Plaintiff's 42 U.S.C. § 1983 claim because Plaintiff offers no evidence to establish that Defendants' alleged deprivation of her federal rights resulted from a policy or custom of Defendant Township or of Defendant Police Department.

If this Court dismisses Plaintiff's 42 U.S.C. § 1983 claim with prejudice, it must decline to exercise jurisdiction over Plaintiff's claim under the New Jersey Tort Claims Act. Were this court to exercise jurisdiction over this claim, Defendants still are entitled to the dismissal of the claim. Plaintiff is barred from bringing an action under the New Jersey Tort Claims Act because Plaintiff failed to satisfy the presentation of claims requirements of N.J.S.A. 59:8-8 and N.J.S.A. 59:8-9.

For these reasons, Defendants respectfully request that this court grant them summary judgment and dismiss Plaintiff's 42 U.S.C. § 1983 claim and New Jersey Tort Claims Act claim with prejudice.

Respectfully submitted,

PARKER MCCAY P.A.
Attorneys for Defendants,
Delran Township, Delran Police Dept., Officer
Jill Boyle and Sgt. Murphy

By:   /s/ John C. Gillespie
      JOHN C. GILLESPIE

Dated:  June 29, 2006

20