IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PATRICIA VENNER,<br><br>               Plaintiff,<br><br>       v.<br><br>DELRAN TOWNSHIP, et al.,<br><br>               Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil Action<br>No. 05-2480 (JBS)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE**, District Judge:

   This matter comes before the Court upon the motion of Defendants Delran Township, Delran Township Police Department, Officer Jill Boyle, and Sergeant Martin Murphy (the "Defendants") for summary judgment pursuant to Fed. R. Civ. P. 56.  Plaintiff Patricia Venner, appearing pro se, brought this cause of action against Defendants claiming a violation of her civil rights and the New Jersey Tort Claims Act related to Plaintiff's arrest and detention while shopping at a Delran Township supermarket.  The Defendants' motion is unopposed and for the following reasons, Defendants' motion for summary judgment will be granted.

   **The Court finds as follows:**

   1.  On May 19, 2003, Plaintiff, an African American female, entered the Shop Rite grocery store in Delran Township. (Transcript of Municipal Court Hearing at 7, dated 8/13/03,

Def.'s Br. at Ex. A.)[1]  Plaintiff's behavior and clothing garnered the attention of Carolyn Williams, a female undercover loss prevention detective employed by Shop Rite who suspected Plaintiff of attempting to shoplift.  (Id. at 8-11.)  Williams attempted to discreetly observe Plaintiff from a distance of approximately 15 to 20 feet for approximately 12 to 20 minutes.  (Id. at 11, 22.)

    2.   Plaintiff discovered Williams observing her and confronted her.[2]  (Id. 14-15, 25.)  Soon after, a store employee called the Delran Township Police Department and Patrolwoman Boyle and Sergeant Murphy responded.  (Boyle Aff. ¶ 2-3.)  According to Patrolwoman Boyle, when confronted by the police, Plaintiff "was very uncooperative" and initially refused to produce identification.  (Id. ¶ 8.)  Williams then recounted to Murphy and Boyle what she observed of Plaintiff and her confrontation with Plaintiff.  Williams also stated that

---

[1] At the conclusion of Plaintiff's encounter at Shop Rite, Plaintiff was arrested and issued a summons charging her with the petty disorderly persons offense of harassment in violation of N.J. Stat. Ann. 2C:33-4.  (Affidavit of Officer Jill Boyle ¶ 11, Def.'s Br. at Ex. F.)  Much of the recitation of facts in this Memorandum Opinion was taken from a transcript of the hearing before Municipal Court Judge Richard E. Andronici.  (Def.'s Br. at Ex. A-C.)

[2] Williams testified that Plaintiff was very aggressive in her confrontation, pointing her finger in Williams' face at close range and threatening her.  (Id. at 15.)  Plaintiff's version of events portrayed her as less aggressive.  (Id. at 25.)  At the municipal court proceeding, Judge Andronici found Williams' testimony about the confrontation credible.  (Id. at 54.)

Plaintiff had harassed her and that she would give a sworn statement to that effect.  (Def.'s Br. at Ex. I.)  After taking a sworn complaint from Williams, (Boyle Aff. ¶ 10.), Boyle and Murphy placed Plaintiff under arrest, handcuffed her and transported her to the Delran Township Police Department where Plaintiff was processed.  (Id.)[3]

3.   Plaintiff was held at the Delran Township Police Station for approximately 30 to 45 minutes.  (Id. at 62.)  During that time, the police contacted the Municipal Court Judge Richard E. Andronici who directed Boyle to issue a summons charging Plaintiff with the petty disorderly persons offense of harassment, in violation of N.J. Stat. Ann. 2C:33-4.  Boyle issued the summons and informed Plaintiff that she was free to leave.  (Boyle Aff. ¶ 11.)  Prior to leaving Plaintiff provided Boyle with a sworn complaint alleging harassment against Williams.[4]

4.   On August 13, 2003, Plaintiff was tried on the harassment charge before Judge Andronici in municipal court.

---

[3] Plaintiff testified that, while at Shop Rite, she was taken upstairs by, Boyle, Murphy and Patrolman Howly. (Deposition Transcript of Patricia Venner at 55-60.)  Plaintiff states that she Boyle and Howley went into one room while Sgt. Murphy took her handbag and identification into another room. (Id. at 58.)  Plaintiff stated that she was unable to see what transpired in the other office because the door to the office was closed.  (Id. at 59.)

[4] The harassment complaint filed against Williams was subsequently dismissed.

(Def.'s Br. at Ex. C.)  Judge Andronici found credible Williams' testimony that: (1) Plaintiff's conduct in the Shop Rite warranted Williams' observations; (2) that Plaintiff became upset, confronted Williams and asked if Williams was following her; and (3) that Plaintiff pointed a finger in Williams' face when she confronted Williams and threatened to injure her eyes in some fashion.  Judge Andronici then ruled that, as a matter of law, Plaintiff made a communication likely to cause annoyance or alarm in violation of N.J. Stat. Ann. 2C:33-4a but ultimately concluded, that the State did not prove beyond a reasonable doubt that Plaintiff made this communication with intent to harass Williams, as required by the statute.  As such, Judge Andronici acquitted Plaintiff of the harassment charge.

5.  Plaintiff filed her complaint on May 11, 2005 in which Plaintiff alleged claims under 42 U.S.C. § 1983 and the New Jersey Tort Claims Act.  Specifically, Plaintiff alleges that Defendants violated her right to be free from unreasonable searches and seizures under the Fourth Amendment, that she was falsely imprisoned and arrested, and that Defendants violated her rights under the Equal Protection Clause of the Fourteenth Amendment.  Defendants filed a motion for summary judgment on June 29, 2006.  The motion is unopposed.

6.  On a motion for summary judgment, the court must determine whether "there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law." Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999)(citing Fed. R. Civ. P. 56(c)).  A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the nonmoving party fails to oppose the motion by evidence such as written objection, memorandum, or affidavits, the court "will accept as true all material facts set forth by the moving party with appropriate record support." Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990)(quoting Jaroma v. Massey, 873 F.2d 17, 21 (1st Cir. 1989)).  If the nonmoving party has failed to establish a triable issue of fact, summary judgment will not be granted unless "appropriate," and only if movants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); see Anchorage Assocs., 922 F.2d at 175.

7.  The Court will first grant Defendants' motion with respect to Plaintiff's Section 1983 claims against defendant Delran Township because the Township is entitled to qualified immunity.  Local governing bodies can be sued directly under 42 U.S.C. § 1983 for "monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's

officers." Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690 (1978). Municipal liability attaches only where execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. See id. at 694. In the case of either policy or custom, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom. Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).[5]

    8. In this case, Plaintiff has not presented any evidence from which a reasonable jury could determine that Delran Township maintained an official policy or custom warranting a finding of municipal liability. Likewise, Plaintiff has failed to demonstrate that Delran Township had actual notice of the conduct giving rise to the alleged constitutional violation or that similar incidents have occurred in the past. As such, the Court will grant Defendants' motion for summary judgment as to Delran Township because summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

---

    [5] In other words, an official policy must be "the moving force of the constitutional violation" in order to establish the liability of a government body under Section 1983. Polk County v. Dodson, 454 U.S. 312, 326 (1981) (quoting Monell, 436 U.S. at 694.)

party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322-23 (1986).[6]

9. With respect to Plaintiff's Section 1983 claims against Patrolwoman Boyle and Sgt. Murphy, the Court will also grant Defendants' motion for summary judgment. Defendants' motion will be granted with respect to Plaintiff's three separate Section 1983 violations (false arrest/false imprisonment, illegal search and seizure and violation of equal protection) as Boyle and Murphy are both entitled to qualified immunity.[7] In determining whether an officer is immune from suit, a court must first inquire whether "the facts alleged show the officer's conduct violated a constitutional right." Id. at 201. If a plaintiff fails to establish that a constitutional right was violated, the

---

[6] Summary judgment is also appropriate for Defendant Delran Township Police Department. It is well-established that in a Section 1983 cause of action, a police department cannot be sued in conjunction with a municipality because the police department is merely an administrative arm of the local municipality and not a separate judicial entity. See Bilbili v. Klein, 2005 U.S. Dist. LEXIS 11464 * 9 (D.N.J. 2005); see also Linden v. Spagnola, No. 99-2432, 2002 U.S. Dist. LEXIS 14573, at *17-18 (D.N.J. June 27, 2002).

[7] Under the doctrine of qualified immunity, police officers, as public officials performing discretionary duties within the scope of their employment, are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The privilege is more than a defense to liability, it is an immunity from suit. Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

7

matter of qualified immunity is obviated and the inquiry ends. See id. If, however, a violation could be ascertained when the facts are viewed in the light most favorable to the party asserting the injury, a court must then inquire whether the right was "clearly established" at the time of the officer's allegedly unlawful conduct. Id.[8]

    10. Plaintiff first alleges violations of the Fourth Amendment under 42 U.S.C. § 1983 related to Defendants' false arrest/false imprisonment[9] claims in connection with her detention and arrest after Boyle and Murphy responded to the call at the Shop Rite. Defendants claim that they are entitled to qualified immunity. The first step in a qualified immunity analysis is for the Court to determine whether the facts, as alleged, show that Patrolwoman Boyle and Sgt. Murphy's conduct violated Plaintiff's constitutional rights. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons...against unreasonable

---

[8] The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991).

[9] False arrest or false imprisonment is "the constraint of the person without legal justification" consisting of two elements: "(1) an arrest or detention of the person against his will; (2) done without proper legal authority or legal justification." Fleming v. United Postal Serv., Inc., 255 N.J. Super. 108, 155 (Law Div. 1992). New Jersey courts treat false arrest and false imprisonment as the same tort. See Price v. Phillips, 90 N.J. Super. 480, 484 (App. Div. 1966).

searches and seizures, shall not be violated." A "seizure" triggering Fourth Amendment protection occurs when a government actor "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968); Baker v. Felice, 2005 U.S. Dist. LEXIS 7829 (D.N.J. May 2, 2005). To determine the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983). A police officer, then, is justified in stopping and briefly detaining an individual if the officer has reasonable suspicion that the individual is involved in criminal activity. See Terry, 392 U.S. at 30. The stop and detention, however, must be based upon "specific and articulable facts which, taken together with rational inferences from those facts reasonably warrant that intrusion." Id. at 21.

11. Under the present facts, Patrolwoman Boyle and Sgt. Murphy's detention and arrest of Plaintiff during their investigation was a "seizure" triggering Fourth Amendment protections. However, the brief detention was legally justified as Plaintiff was detained while Boyle and Murphy investigated the matter to determine whether potential criminal activity occurred while Plaintiff was at the Shop Rite and contacted Municipal

9

Court Judge Andronici to determine whether to issue Plaintiff a summons.  Moreover, it is undisputed that Plaintiff's arrest was based on specific and articulable facts as the arrest was premised on Williams' sworn complaint detailing her encounter with Plaintiff.  From these facts, Defendants' detention and subsequent arrest of Plaintiff was legally justified and the Court concludes that Sgt. Murphy and Patrolwoman Boyle's conduct of briefly detaining and arresting Plaintiff did not violate Plaintiff's constitutional rights under the Fourth Amendment.

    12.  In a related claim, Plaintiff next alleges that Defendants Boyle and Murphy violated her Fourth Amendment rights against illegal searches when Sgt. Murphy allegedly searched Plaintiff's handbag while Plaintiff was in police custody.  The Court will also grant summary judgment on behalf of Defendants Murphy and Boyle with respect to this claim because Plaintiff has failed to raise a genuine issue of material fact regarding whether Murphy actually searched her handbag while she was in police custody.  Although Plaintiff testified that, while at Shop Rite, Sgt. Murphy took her handbag and identification into another room, (Id. at 58.) Plaintiff also stated that she was unable to see what transpired in the other office because the door to the office was closed.  (Id. at 59.)  Based on such contradictory accounts in Plaintiff's own testimony, the Court finds that no genuine issue of material fact exists regarding

whether Murphy violated Plaintiff's constitutional rights by searching her handbag.

 13. Plaintiff next alleges that Patrolwoman Boyle and Sgt. Murphy violated her Fourteenth Amendment equal protection rights. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amdt. 14, § 1. An allegation of racial discrimination in violation of the Constitution's guarantee of equal protection cannot survive unless the plaintiff establishes that the defendant acted with discriminatory intent. See Washington v. Davis, 426 U.S. 229, 241 (1976).

 14. Here, Plaintiff has failed to offer any proof that either Boyle or Murphy's actions were done with the intent to discriminate against Plaintiff because of her race.  Even taking all of Plaintiff's factual allegations as true, there is absolutely nothing in the record to demonstrate that Boyle or Murphy detained or questioned Plaintiff because of her racial or ethnic background and Plaintiff has not set forth anything - other than her blanket assertion in her Complaint that she was detained because of her race - to show that the officers acted with discriminatory intent.  Given that there is no evidence of discriminatory intent, whether direct or indirect, Plaintiff

cannot demonstrate a violation of her constitutional right to equal protection.

15.  In sum, the Court concludes that Defendants Murphy and Boyle did not violate Plaintiff's Fourth or Fourteenth Amendment rights.  Having found no violation of her Constitutional rights, the Court need not continue the qualified immunity analysis by inquiring whether Plaintiff's rights were "clearly established" at the time of the officers' alleged unlawful conduct.

16.  Finally, the Court will also grant Defendants' motion for summary judgment with respect to Plaintiff's claims under the New Jersey Tort Claims Act ("NJTCA").  See N.J. Stat. Ann. 59:1-1 et seq.  Summary judgment is appropriate as to this claim as Plaintiff is barred from bringing an action under the NJTCA as Plaintiff has failed to present her claim to Delran Township within 90 days of its accrual.  Under N.J. Stat. Ann. 59:8-8, a plaintiff "shall be forever barred from recovering against a public entity or public employee if . . . [the plaintiff] failed to file [her] claim with the public entity within 90 days or accrual of [her] claim . . . ."[10]  Plaintiff's claim accrued on

---

[10] Section 59:8-8(a) contains one exception that is inapplicable in this case but that this Court should address. Specifically, Section 59:8-8(a) references Section 59:8-9 which states that a claimant who fails to file notice of his claim within 90 days, "may, in the discretion of a judge in the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or public employee has not been substantially prejudiced thereby."  N.J. Stat. Ann. 59:8-9. Plaintiff's claim

May 19, 2003 but has never filed a notice of claim with Defendants.  As such, Plaintiff's NJTCA claim is barred and must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment will be granted and Plaintiff's 42 U.S.C. § 1983 and NJTCA claims will be dismissed.  The accompanying Final Judgment will be entered.

**January 22, 2007**         **s/ Jerome B. Simandle**
Date                          JEROME B. SIMANDLE
                              U.S. District Judge

---

accrued on May 19, 2003 yet Plaintiff has never filed a notice of claim.

13